**Karen L. SCHAUB, Appellant (Plaintiff),**

v.

**Michael A. WILSON, Appellee (Defendant). (Two cases)**

**Nos. 96–159, 96–268.**

Supreme Court of Wyoming.

Dec. 21, 1998.

Eric M. Alden, Wheatland, Wyoming, for Appellant.

Peter S. Dusbabek of Montgomery, Kolodny, Amatuzio, Dusbabek & Parker, L.L.P., Ft. Collins, Colorado, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The major issue to be resolved in this case addresses the scope of the hearing on damages conducted by the trial court pursuant to W.R.C.P. 55(b)(2) in a personal injury action after the entry of default pursuant to W.R.C.P. 55(a). Collateral issues are raised concerning the burden of proof of pre-existing conditions and the validity of the findings of fact made by the trial court. After conducting the hearing on damages, the trial court ruled that Karen L. Schaub (Schaub) had failed to establish that her claimed damages were caused by the automobile collision, which was the subject of her action against Michael A. Wilson (Wilson), and the trial court denied any recovery to Schaub. The trial court also assessed costs against Schaub, and that ruling is the subject of a consolidated appeal. We hold that no error

---

* Chief Justice at time of expedited conference; retired November 2, 1998.

occurred in the determination of the trial court that the injuries for which damages were sought were not caused by the collision that led to the filing of this case, and that the trial court did not abuse its discretion in awarding costs to Wilson. The Judgment and Order in favor of Wilson and the Judgment that awarded the costs to Wilson are affirmed.

In the primary appeal, Case No. 96–159, the following issues are set forth in the Appellant's Brief, filed on behalf of Schaub:

1. Does the Court's holding in *McGarvin–Moberly* apply to default cases against single defendants?

2. To what extent does an entry of default under *Rule 55(a)* determine the issue of causation?

3. Did the trial Court misapply the burden of proof on pre-existing conditions?

4. Were the District Court's findings of fact clearly erroneous?

In the Brief of Appellee in that case, the issues are stated in this way:

1. Was the Trial Court correct in determining that the issue before it was to determine the damage, if any, suffered by Mrs. Schaub as a result of the accident involving Mr. Wilson.

2. Was the Trial Court correct in determining that Mrs. Schaub had the burden to prove the damages [were] proximately caused as a result of the accident involving Mr. Wilson.

3. Was the Trial Court's factual finding that Mrs. Schaub had not met her burden of proof clearly erroneous.

In the consolidated case, Case No. 96–268, the issue stated in the Appellant's Brief, filed on behalf of Schaub is:

1. Did the Trial Court err in awarding costs in favor of a defaulted defendant?

In the Brief of Appellee, filed on behalf of Wilson in that case, the issue is restated as:

Did the Trial Court abuse its discretion in awarding costs for the Defendant Michael Wilson?

On February 24, 1995, Schaub filed a Complaint alleging negligence on the part of Wilson in driving a motor vehicle so that it struck Schaub's vehicle from the rear. Schaub alleged as damages injuries to her neck and property damage to her vehicle. She sought to recover compensation for her injuries, medical bills, repairs to her vehicle, and costs. Service was perfected upon Wilson on February 26, 1995, and there followed negotiations of settlement between Schaub and Wilson's insurance carrier. Ultimately, counsel for Schaub wrote to the insurance company representative stating, "If I have not heard from you by May 5, 1995, I will proceed on the assumption that you are not going to respond." When no answer or other responsive pleading had been filed by May 8, 1995, Schaub sought and secured an entry of default pursuant to W.R.C.P. 55(a).

The next day, an Answer was filed by Wilson, and on May 18, 1995, Wilson presented a Motion to Set Aside Default Judgment. In the decision letter with respect to setting aside the default, the trial judge reviewed the chronology of the case and considered the motion as one to set aside a default since no default judgment had been entered. The trial court ruled that Wilson had not shown good cause to set aside the default in that culpable conduct of Wilson led to the default and Wilson had not shown a meritorious defense. In the decision letter, the trial judge asked counsel to review *McGarvin–Moberly Const. Co. v. Welden*, 897 P.2d 1310 (Wyo.1995), for the analysis of the role of a defaulted defendant in the determination of damages. Subsequently, after what the trial court called a trial (presumably the hearing to determine the amount of damages provided in W.R.C.P. 55(b)(2)), the trial court ruled that Schaub's injuries were not proximately caused by the collision, and found generally in favor of Wilson and against Schaub. The decision letter was followed by a Judgment and Order in favor of Wilson and requiring him to submit his Bill of Costs promptly. Schaub appealed from the Judgment and Order. The trial court then entered a Judgment awarding costs to Wilson, and that was followed by a second appeal by Schaub, which has been consolidated with the initial appeal.

We turn to the decision letter of the district court to summarize the facts as found

by the trial judge and his rulings as to the issue of damages:

### Background of the Case

This is a negligence action involving a minor traffic accident that occurred on July 19, 1991. The Plaintiff's vehicle was stopped at a yield sign, waiting to enter into an intersection when the Defendant's vehicle, approaching from behind at approximately five to ten miles per hour, bumped into the Plaintiff's vehicle. Neither vehicle was damaged. However, the Plaintiff suffers from certain neck injuries, which she alleges were made worse by the accident. She seeks recompense from the Plaintiff for medical bills, pain and suffering, lost wages, and homemaking expenses, past and future.

A procedural quirk in the case is the fact that default has been entered against the Defendant, which default the Court has refused to set aside. Consequently, the liability issue has been determined, and the only question before the Court is the amount of damages, if any, to be awarded.

### Facts

The material facts of this case revolve around the Plaintiff's physical health and condition before and after the accident involving the Defendant. The Plaintiff's relevant medical history includes the following events:

1. In 1967, she was in a very serious motor vehicle roll-over accident. She was thrown through the windshield, and suffered head injuries, a concussion, a cervical spine fracture, shoulder blade fractures and collar bone fractures.

2. In 1972, she fell down a flight of stairs, fracturing an ankle.

3. In 1980, she was in another vehicle roll-over accident, from which she suffered bruised back muscles.

4. In 1981, she had arthroscopic knee surgery.

5. In 1982, she fell while roller skating, later experiencing back pain.

6. In 1982, she "turned to look at a child" and suffered a "burning sensation" in her neck, with pain radiating into her arm and into the area between her shoulder blades.

7. In 1983, she received medical treatment for continuing neck problems.

8. In 1986, she consulted Dr. Sherard for continuing neck pain, and was diagnosed as suffering from cervical spine disease, a chronic degenerative process.

9. In December, 1990, during a family dispute, she was thrown into a chair, which tipped over with her, causing her to suffer a hyper-extended neck. Resulting muscle spasms were treated with anti-inflammatory drugs, and when the pain did not subside, she began a course of physical therapy in March, 1991. She described "constant pain" resulting from this incident.

10. In March, 1991, she hurt her neck while cleaning her oven. She again complained to her physical therapist of severe neck pain.

11. In April, 1991, she tripped in her backyard, hitting her face on a fence and again suffering severe neck and back pain, for which she again sought physical therapy.

12. In July, 1991, she was involved in the above-described accident with the Defendant. She immediately complained of neck pain and went to the hospital emergency room. Cervical x-rays taken that day showed no signs of acute traumatic injury, but did show signs of chronic arthritic-type degenerative changes.

13. In March, 1992, she sought treatment from Dr. Shafer, a neurologist, for her persistent back, leg and rib pain.

14. In July, 1992, she was referred to Dr. Curnow and Dr. Southwell, who are orthopedic surgeons. Dr. Southwell performed a bi-level disc fusion. Specifically, he found bony spurs and a narrowed disc space at C5–6, and a herniated disc at C6–7.

15. In February, 1993, she had a second neck surgery because one of the bone fusions from the first surgery failed.

16. In September, 1993, while standing up from a booth at a restaurant, she struck her head on the light over the booth, which

resulted in a "minor jar" and neck muscle spasms.

17. In August, 1994, while entering another restaurant, she tripped, "became airborne" and struck her head on a glass door hard enough to crack the glass. She was severely injured by this fall, again suffering neck pain, and eventually having lower back surgery (June, 1995) and ankle surgery (September, 1995).

18. Finally, Dr. Southwell testified that he has also treated the Plaintiff for bilateral tennis elbow and carpal tunnel syndrome.

It is significant that, in addition to these specific events, the Plaintiff repeatedly sought out and obtained medical treatment for chronic neck pain *for many years before the accident with the Defendant.*

### Issues

The question for the Court is what damage, if any, was suffered by the Plaintiff as a result of the accident involving the Defendant. In the peculiar context of this case (the Plaintiff's considerable pre- and post-accident medical history), the specific issue becomes one of apportionment: can damages be apportioned among the Plaintiff's pre-existing condition, the accident, and post-accident events, and if so, what is the resulting apportionment?

### Discussion

Generally, a plaintiff in a negligence action must establish four elements of a cause of action: duty, breach, proximate cause, and damages. *Daily v. Bone,* 906 P.2d 1039, 1043 (Wyo.1995); *Hamilton v. Natrona County Educ. Ass'n,* 901 P.2d 381, 384 (Wyo.1995); *Jack v. Enterprise Rent–A–Car Co. of Los Angeles,* 899 P.2d 891, 894 (Wyo.1995). In a case involving unliquidated damages, where default has been entered, the defendant may no longer contest liability, but may contest the issue of damages. *Vanasse v. Ramsay,* 847 P.2d 993, 996–997 (Wyo.1993); *Spitzer v. Spitzer,* 777 P.2d 587, 592 (Wyo.1989).

There are some situations where the damages issue is so intertwined with the fault issue that, despite a default, the defendant must be allowed to defend on the question of fault. Under the comparative negligence statute, for example, where a defendant is only liable for that portion of the damages for which he is at fault, a defaulted defendant must be allowed to defend the fault issue. *McGarvin–Moberly Const. Co. v. Welden,* 897 P.2d 1310, 1313–1316 (Wyo.1995). The Court is unaware of any reason or policy to distinguish that situation from the present situation, where the issue is the apportionment of damages among sequential events. In both cases, the purpose is to limit a defendant's liability to those damages for which he is actually responsible.

Not surprisingly, the party seeking recovery of damages bears the burden of proof. *Cottonwood Valley Ranch, Inc. v. Roberts,* 874 P.2d 897, 899 (Wyo.1994). Damages must be proven with a reasonable degree of certainty, and a court may not resort to speculation or conjecture in determining the proper amount of damages. *Sannerud v. Brantz,* 879 P.2d 341, 345 (Wyo.1994); *Skane v. Star Valley Ranch Ass'n,* 826 P.2d 266, 269 (Wyo. 1992).

In cases involving sequential potential causes of a plaintiff's damages, the first question is whether damages *can* be apportioned among the causes. If so, a defendant is liable only for that portion of the damages that he actually caused. If not, and it can be shown that he aggravated a pre-existing condition, the defendant is liable for the entire disability. *Bigley v. Craven,* 769 P.2d 892, 896–898 (Wyo.1989); *Hashimoto v. Marathon Pipe Line Co.,* 767 P.2d 158, 160–161 (Wyo.1989); *Chrysler Corp. v. Todorovich,* 580 P.2d 1123, 1130–1131 (Wyo.1978). On the other hand, in the case of a subsequent intervening cause where apportionment cannot be accomplished, the first defendant is not liable for any of the damages. *Id.*

In the case now before the Court, the Plaintiff takes the position that the Defendant's negligence aggravated her preexisting condition, that damages cannot be apportioned, and that the Defendant is, therefore, fully liable. Further, the Plaintiff argues that she has fully recovered from any subsequent injuries, and that

such injuries should not be considered in determining her future damages. Before the issue of apportionment arises, however, the Plaintiff must have met her initial burden of proving that this accident was a proximate cause of the damages she seeks. *Hashimoto, supra* at 161. Stated conversely, a defendant is not liable at all for injury not proximately caused by his breach of duty. *Martinez v. City of Cheyenne,* 791 P.2d 949, 960 (Wyo.1990). [Though not on point, Worker's Compensation law is similar, where a claimant with a pre-existing condition bears the burden of proving that his injuries were proximately caused by his work related injury. *Matter of Corman,* 909 P.2d 966, 968–969 (Wyo. 1996).]

Proximate cause means that the injury was the natural and probable consequence of the act of negligence. *Downen v. Sinclair Oil Corp.,* 887 P.2d 515, 520 (Wyo. 1994); *Natural Gas Processing Co. v. Hull,* 886 P.2d 1181, 1186 (Wyo.1994). The existence of proximate cause is a question of fact. *Daily, supra* at 1043. In the instant case, the Plaintiff largely relies on the opinions of one or more of her doctors that the accident involving the defendant, at least in part, contributed to or caused her neck problems. The Court is convinced, however, from the totality of the circumstances, that the Plaintiff has not met her burden of proof in this regard. In particular, the following cannot be ignored:

1. The accident was very minor, with no vehicular damage—it was not even a "fender-bender."

2. The medical examination of the Plaintiff's neck at the hospital just after the accident revealed no acute injuries.

3. For years preceding the accident, and indeed, just prior to the accident, the Plaintiff had suffered from and was suffering from chronic cervical degenerative disease. She repeatedly sought out and tried various remedies, including anti-inflammatory drugs, physical therapy, exercise programs, spas, and chiropractic treatment.

4. The doctors testified that a herniated disc, such as was found at the C6–7 location, does not necessarily result from acute trauma, but may just as readily result from chronic degenerative changes.

5. Dr. Southwell's opinion that the accident "caused" the neck injuries was based on an insufficient foundation. Specifically, his opinion was based in large part on the Plaintiff's self-reporting of the accident, and with a less-than-complete medical history. In particular, it does not appear that the physical circumstances of the accident—speed, direction, force, angle of impact, seat support, etc.—were considered by any of the doctors in reaching their respective opinions. An expert's opinion does not have to be accepted by the factfinder. *RYN, Inc. v. Platte County Memorial Hospital,* 842 P.2d 1084, 1088 (Wyo.1992). This is especially true where, as here, there are conflicting opinions. *Matter of Thornberg,* Wyoming Supreme Court Slip Opinion No. 95–121, March 26, 1996 [913 P.2d 863 (Wyo.1996) ].

**Conclusion**

After the minor accident between the Plaintiff's vehicle and the Defendant's vehicle, the Plaintiff did complain of pain in her neck. That is not enough to prove that the accident was *the* proximate cause, or even *a* proximate cause of the Plaintiff's injuries. If at the time of the accident, as the Plaintiff sat in her car at the intersection, she was at that moment suffering from an untreated broken leg, a bump from another vehicle might well have caused her pain. But the bump in that hypothetical case would no more have caused her broken leg than would the bump in our actual case have caused her neck problems.

The Court will find generally for the Defendant and against the Plaintiff * * *.

(Emphasis in original.)

Quite probably due to the approach taken by the trial court, Schaub devotes substantial argument to addressing the reasons why *McGarvin–Moberly Const. Co.,* 897 P.2d 1310, as interpreted in *Olsten Staffing Services, Inc. v. D.A. Stinger Services, Inc.,* 921 P.2d 596 (Wyo.1996), should not apply in this instance. Schaub argues earnestly that in the instance of a single tortfeasor in default, there is no justification for visiting the proxi-

mate cause element of the cause of action for negligence, and that the only question at the hearing on the default judgment is the amount of the damages suffered by the plaintiff. Schaub professes confusion between dictum in *Olsten Staffing Services, Inc* and language in *McGarvin–Moberly Const. Co.* that states that the element of proximate cause is adjudicated by the entry of default. Schaub, as support for her position, invokes the language of W.R.C.P. 8(d) that pleading averments, other than the amount of damages, are admitted if not denied in a responsive pleading, and the effect of the entry of default is to foreclose a responsive pleading by the defendant.

Unfortunately, the world is seldom as simple and direct as we drafters of rules would like to assume. The focus of the debate in this case is whether our prior cases lead to a conclusion that only the amount of damages is in issue in the hearing conducted pursuant to W.R.C.P. 55(b)(2) (Schaub's position) or whether the fact of damage attributable to the event is in issue (the basis of the trial court's ruling). We cannot conceive of a way

for a court to conduct the hearing provided for in W.R.C.P. 55(b)(2) [1] in light of Wyo. Stat. § 1–1–109 (Repl.1988) [2] without placing the fact of damage in issue.

■ While Schaub argues that inconsistencies between the holdings in *McGarvin–Moberly Const. Co.* and *Olsten Staffing Services, Inc.* demand clarification, we do not analyze this case in the same way. The thrust of both *McGarvin–Moberly Const. Co.* and *Olsten Staffing Services, Inc.* must relate back to the language of Wyo. Stat. § 1–1–109. In *McGarvin–Moberly Const. Co.*, 897 P.2d at 1314–15, we held that in order to have the opportunity to litigate damages under that statute, a defendant in default was entitled to participate fully in the case on the issue of damages. The facts of that case left little room to assume that any breach of a duty on the part of *McGarvin–Moberly Const. Co.* would not be a proximate cause of damage to the plaintiff. In *Olsten Staffing Services, Inc.*, 921 P.2d at 600, by way of dictum, the court indicated that full participation on the damage question would justify

1. W.R.C.P. 55(b) provides, in pertinent part:

(b) *Judgment.*—Judgment by default may be entered as follows:

(2) By the Court.—In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against a minor or an incompetent person unless represented in the action by a guardian, guardian ad litem, trustee, conservator, or other such representative who has appeared therein. If the party against whom a judgment by default is sought has appeared in the action the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

2. Wyo. Stat. § 1–1–109 provided:

(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence

resulting in death or in injury to person or property, if the contributory negligence of the said person is not more than fifty percent (50%) of the total fault. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

(b) The court may, and when requested by any party shall:

(i) If a jury trial:

(A) Direct the jury to find separate special verdicts determining the total amount of damages and the percentage of fault attributable to each actor whether or not a party; and

(B) Inform the jury of the consequences of its determination of the percentage of fault.

(ii) If a trial before the court without jury, make special findings of fact, determining the total amount of damages and the percentage of fault attributable to each actor whether or not a party.

(c) The court shall reduce the amount of damages determined under subsection (b) of this section in proportion to the amount of fault attributed to the person recovering and enter judgment against each defendant in the amount determined under subsection (d) of this section.

(d) Each defendant is liable only for that proportion of the total dollar amount determined as damages under paragraph (b)(i) or (ii) of this section in the percentage of the amount of fault attributed to him under paragraph (b)(i) or (ii) of this section.

defending on the premise that no damages were caused by the duty and breach of duty. That is the approach that the trial court took in this case, and we see no prospect for honoring the statutory scheme for determining damages in such a case unless the single defendant has the same opportunity to defend on the issue of damages as the defendant in a multiple defendant case. It follows that the trial court correctly concluded that Wilson could, in defending the question of damages, assert that no damages were caused by the collision between the two vehicles.

This analysis leads us back, not to the right to litigate proportionate fault, as to which Wilson must be foreclosed since no claim of Schaub's negligence is available to him, but to the application of Wyo. Stat. § 1-1-109(b)(ii), which charges the trial court with determining the total amount of damages. Pursuant to the provisions of Wyo. Stat. § 1-1-109(d), Wilson is liable only for the proportion of the total dollar amount determined as damages in the percentage of the amount of fault attributed to him. We do not understand the statute to assume that damages can exist in a vacuum, but the damages the trial court is charged with determining must have been incurred in the event as to which recovery is sought. Even though Wilson is charged with one hundred percent of the fault, if no damages were caused by Wilson's fault, no recovery can be had.

If Wilson has a right to litigate damages, and the law justifies that opportunity, then Wilson must enjoy the opportunity to challenge the proposition that the damages claimed were a product of this collision. That is the opportunity the trial court afforded to Wilson, and the issue was resolved in favor of Wilson by the determination of the trial court that no damages were incurred by Schaub as a result of this collision.

Schaub urges the proposition that, in view of the default, the fact of the damages must be deemed admitted. We have, however, spoken directly to the necessity of proving damages in a default case in *Adel v. Parkhurst*, 681 P.2d 886, 892 (Wyo.1984), where, relating punitive damages to unliquidated damages, we said:

We now hold that in the absence of evidence of a defendant's wealth or financial condition an award of punitive damages cannot be sustained. The Parkhursts argue that this should not be a fatal error in view of the default which Adel permitted. The burden, however, is upon those seeking more than mere nominal damages to prove their damages. *Albin Elevator Company v. Pavlica*, Wyo., 649 P.2d 187 (1982); *Downing v. Stiles*, Wyo., 635 P.2d 808 (1981); and *National Bank of Lovell v. Moncur*, Wyo., 624 P.2d 765 (1981). The requirement of Rule 55(b)(2), W.R.C.P., of a hearing with respect to damages which are not liquidated is consistent with the rule of those cases. The default permitted by a defendant does not concede the amount demanded for unliquidated damages. *Pope v. United States*, 323 U.S. 1, 102 Ct.Cl. 846, 65 S.Ct. 16, 89 L.Ed. 3 (1944), and other cases cited in 10 Wright, Miller and Kane, Federal Practice and Procedure, § 2688, p. 450, n. 20 (1983).

We turn then to the contention of Schaub that the trial court misapplied the burden of proof on pre-existing conditions. The general proposition with respect to this issue was articulated in *Hashimoto v. Marathon Pipe Line Co.*, 767 P.2d 158, 161 (Wyo. 1989):

> Hashimoto has shown no reason for this court to abandon the general rule
>
> "that one injured by the negligence of another is entitled to recover the damages proximately caused by the act of the tort-feasor, and the burden of proof is upon the plaintiff to establish that the damages he seeks were proximately caused by the negligence of the defendant."
>
> *Bruckman [v. Pena*, 29 Colo.App. 357], 487 P.2d [566] at 568 [ (1971) ]. See also Annotation, *Proximate Cause: Liability of Tortfeasor for Injured Person's Subsequent Injury or Reinjury*, 31 A.L.R.3d 1000, 1003–04 (1970).

This general proposition is supported directly or by analogy in *Cottonwood Valley Ranch, Inc. v. Roberts*, 874 P.2d 897, 899 (Wyo.1994) and *Adel*, 681 P.2d at 892 (and the cases

there cited). The trial court committed no error in assigning to Schaub the duty to prove the damages attributable to the collision with her vehicle by Wilson's vehicle, including a requirement for apportionment.

■ The last issue asserted in the main appeal by Schaub is a contention that the findings of the trial court are not supported by sufficient evidence. We have spoken to the standard that we apply with respect to findings of fact by the trial court:

> This Court presumes that the trial court's findings of fact are correct and will not disturb those findings on appeal unless they are inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. *Narans v. Paulsen*, 803 P.2d 358, 360 (Wyo.1990). The question is not whether we would have reached the same result but is whether sufficient evidence supported the trial court's conclusion. *Id.*

*Frost Const. Co. v. Lobo, Inc.*, 951 P.2d 390, 394 (Wyo.1998). This same proposition appears in other earlier cases:

> Our standard of review when faced with a sufficiency-of-the-evidence challenge is well known. We presume that the findings of the district court are correct and will not disturb them unless they are clearly erroneous or contrary to the great weight of the evidence. *E.g., Ferguson v. Reed*, 822 P.2d 1287, 1290 (Wyo.1991). When reviewing the evidence, we accept the evidence of the prevailing party as true, giving it all favorable inferences and leaving out all evidence in conflict therewith. *E.g., Town of Wheatland v. Bellis Farms, Inc.*, 806 P.2d 281, 284 (Wyo.1991).

*Hill v. Zimmerer*, 839 P.2d 977, 981 (Wyo. 1992).

> The standard of review applied by this Court when the sufficiency of the evidence is at issue is well settled. We assume that the evidence of the prevailing party is true, leaving out of consideration the evidence presented by the other party in conflict therewith, and giving every favorable inference to the evidence of the successful party that may fairly and reasonably be drawn from it. *Harmon v. Town of Afton*, 745 P.2d 889 (Wyo.1987); *M & M*

*Welding, Inc. v. Pavlicek*, 713 P.2d 236 (Wyo.1986). The findings of the trial court are presumed to be correct and will not be disturbed by this Court unless they are clearly erroneous, inconsistent with the evidence, or contrary to the great weight of the evidence. *Eddy v. First Wyoming Bank, N.A.—Lander*, 750 P.2d 294 (Wyo. 1988); *Pancratz Company, Inc. v. Kloefkorn–Ballard Construction/Development, Inc.*, 720 P.2d 906 (Wyo.1986).

*O's Gold Seed Co. v. United Agri–Products Financial Services, Inc.*, 761 P.2d 673, 676 (Wyo.1988). A perusal of the record in this case discloses a history of injuries to Schaub going back to 1967 when she was thrown through the windshield of a car in an automobile accident. The history continues with a fall down the stairs in 1972; another automobile accident in 1980; a roller skating fall in 1982; a fall when a rocking chair went backwards in 1990; a fall in her yard in 1991; striking her head on a lamp in a restaurant after the collision with Wilson; and a fall into a pane-glass door at a restaurant in which she actually became airborne, again after the collision with Wilson. The record is replete with information about treatment over the years, specifically addressing pain in her neck and the muscles in her neck. Treating physicians were not able to identify any specific trauma following the collision with Wilson, although they did observe evidence of prior injuries and arthritic changes. Schaub relied at trial primarily upon the testimony of Dr. Richard B. Southwell to support a claim that disc herniation at the C6–7 level was a result of the accident with Wilson.

The record demonstrates that Dr. Southwell had not been informed of many important facts relating to her history of neck injury, and our law is to the effect that a court is not bound to accept expert opinion, particularly if it appears to have been in some respect uninformed. *See RYN, Inc. v. Platte County Memorial Hosp. Bd. of Trustees*, 842 P.2d 1084, 1088 (Wyo.1992) and *Matter of Krause*, 803 P.2d 81, 83 (Wyo.1990). Our examination of this record leads us to the ineluctable conclusion that the sufficiency of the evidence to support a determination that Schaub had not been injured in this

collision is beyond the caviling of Schaub. When that proposition is addressed in the context of the failure of Schaub to sustain her burden of proof, the record is manifestly adequate.

We turn then to the matter of costs raised in the consolidated case. The trial court awarded costs to Wilson in the amount of $1,759.85, itemized as:

| | |
|---|---|
| Service of Process | $ 120.00 |
| Expert Witnesses | 1,514.85 |
| Reporter Fees | 50.00 |
| Exhibits Received in Evidence | 75.00 |
| TOTAL | $1,759.85 |

In her appeal, Schaub does not contest the amounts awarded by the trial court. Instead, her theory is that she was the prevailing party because she was entitled to at least nominal damages by virtue of the default, and, consequently, neither Wyo. Stat. § 1–14–126 (Repl.1988) nor W.R.C.P. 54(d) affords authority to the trial court to award costs to Wilson.

■ The general rule is set forth in Wyo. Stat. § 1–14–124 (1997): "Costs shall be allowed to the plaintiff upon a judgment in his favor in an action for the recovery of money only or for the recovery of specific real or personal property, unless otherwise provided by law." The law providing otherwise states, in pertinent part, that "[i]n other actions the court may award and tax costs and apportion them between the parties on the same or adverse sides as it deems right and equitable." Wyo. Stat. § 1–14–126. Our court rule is consistent with the statute, and provides:

(1) Costs Other Than Attorney's Fees. Except when express provision therefor is made either in a statute or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State of Wyoming, its officers or agencies, shall be imposed only to the extent permitted by law.

W.R.C.P. 54(d). Under these statutory and rule provisions, an award of costs is a matter within the discretion of the trial court. In *Abraham v. Andrews Trucking Co.*, 893 P.2d 1156, 1158 (Wyo.1995), we said:

The award of costs pursuant to W.R.C.P. 54(d) rests within the sound discretion of the district court. *Hashimoto v. Marathon Pipe Line Co.*, 767 P.2d 158, 168 (Wyo.1989). "Abuse of discretion occurs when a court exceeds the bounds of reason or commits an error of law." *Combs v. Sherry–Combs*, 865 P.2d 50, 55 (Wyo.1993).

Earlier decisions of this court support the proposition that an award of costs is a matter within the discretion of the trial court. *E.g., Snodgrass v. Rissler & McMurry Co.*, 903 P.2d 1015, 1018 (Wyo.1995); *Carlson v. Carlson*, 888 P.2d 210, 216 (Wyo.1995); *Big–O Tires, Inc. v. Santini*, 838 P.2d 1169, 1176 (Wyo.1992); *Coulthard v. Cossairt*, 803 P.2d 86, 93 (Wyo.1990); and *Stauffer Chemical Co. v. Curry*, 778 P.2d 1083, 1105 (Wyo.1989).

■ Schaub argues that the abuse of discretion in this instance is in the failure to recognize her as the prevailing party. We addressed the definition of a prevailing party in the context of an offer of judgment in *Crawford v. Amadio*, 932 P.2d 1288, 1292 (Wyo.1997), where we said:

Amadio relied upon *Stamp v. Hagerman*, 181 Mich.App. 332, 448 N.W.2d 849, 851 (1989). In *Stamp*, the Michigan Court of Appeals addressed the question of awarding costs to a plaintiff as a prevailing party when the "adjusted verdict" was less than the "average offer" to stipulate to a judgment. The court said:

"[A] party should not be deemed the prevailing party for purposes of taxing costs unless the party improves his or her position by the litigation. * * * [W]e agree that a showing of improved position is a minimal standard for taxing costs. To hold otherwise would encourage unnecessary litigation."

*Stamp*, 448 N.W.2d at 851.

In this case, Schaub did not improve her position in the litigation. On the other hand, Wilson did improve his position substantially over the result indicated by the entry of default. Under the circumstances, Wilson must be regarded as the prevailing party in this instance. Like the trial court, we cannot resist quoting from the Plaintiff's Response to Defendant's Motion for Award of Costs:

It is certainly a very unusual situation where a Defendant defaulted on a case, admitted liability, admitted that an award of some damages is appropriate and still been awarded a judgment including costs.

While this case may be unusual, we discern no abuse of discretion on the part of the trial court in awarding costs to Wilson under the circumstances.

The trial court is affirmed in all respects.